**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| IN RE CONDUENT BUSINESS SERVICES DATA BREACH LITIGATION | Civil Action No. 2:25-cv-16953 (MEF) (ADS) |
| --- | --- |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

James E. Cecchi
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel: (973) 994-1700
Fax: (973) 994-1744
Email: jcecchi@carellabyrne.com

Jeff Ostrow
**KOPELOWITZ OSTROW P.A.**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 332-4200
Fax: (954) 525-4300
Email: ostrow@kolawyers.com

***Plaintiffs' Co-Lead Counsel***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Summary of the Class Claims ........ 2

B. Commencement of the Action, Investigation Into the Class's Claims, Appointment of Plaintiffs' Interim Class Counsel, and Filing of Consolidated Complaints ........ 3

C. Plaintiffs' Discovery Efforts and Expert Work ........ 6

D. The Parties' Extensive Pre-Mediation Efforts ........ 7

E. Mediation, Settlement Negotiations, and Settlement Terms ........ 10

III. SUMMARY OF THE SETTLEMENT ........ 11

A. Settlement Class and Subclasses ........ 11

B. Settlement Fund and Settlement Class Member Benefits ........ 12

C. Releases ........ 14

D. Notice Program and Claim Process. ........ 15

E. Attorneys' Fees, Costs, and Service Awards. ........ 15

IV. LEGAL STANDARD ........ 16

V. ARGUMENT ........ 18

A. Preliminary Approval of the Settlement Is Appropriate ........ 18

1. Plaintiffs and Plaintiffs' Interim Class Counsel Have Adequately Represented the Settlement Class ......................... 18

2. The Proposed Settlement Was Negotiated at Arm's Length.... 21

3. Costs, Risks, and Delay of Trial and Appeal............................ 22

4. The Other Rule 23(e)(2)(C) Factors Are Met........................... 29

5. Settlement Class Members Are Treated Equitably .................. 31

B. The Proposed Notice Program Satisfies Rule 23 and Due Process .... 32

C. The Court Should Certify the Settlement Class and Subclasses......... 35

D. Proposed Class Counsel Satisfy Rule 23(g) ....................................... 43

VI. PROPOSED SCHEDULE ........................................................................ 44

VII. CONCLUSION ........................................................................................ 45

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 35, 39, 41

*In re American Medical Collection Agency, Inc., Customer Data Security Breach Litig.*,
No. 2:19-md-2904-JKS-ADS (D.N.J.) .......... 27

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......... 39

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 40

*Arbitrage Fund v. Toronto-Dominion Bank*,
2023 WL 5550198 (D.N.J. Aug. 29, 2023) .......... 37

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) .......... 26

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018) .......... 26

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) .......... 21

*Burrows v. DC Portfolio Servs., LLC*,
2025 WL 2304797 (D.N.J. Aug. 11, 2025) .......... 18

*Byrd v. Aaron's, Inc.*,
784 F.3d 154 (3d Cir. 2015) .......... 42

*C.P. v. New Jersey Dep't of Educ.*,
2022 WL 3572815 (D.N.J. Aug. 19, 2022) .......... 37

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) .......... 21, 27

*Chabak v. Somnia Inc.*,
2024 WL 4098620 (S.D.N.Y. Sept. 3, 2024) .......... 32

*Crowe, et al. v. Managed Care of North America, Inc., et al.*,
Case No. 23-cv-61065-AHS (S.D. Fla.) ..........24

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ..........28

*Cunningham v. DG3 N. Am., Inc.*,
2025 WL 2919331 (D.N.J. Oct. 14, 2025) ..........25

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010) ..........16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..........32

*Erin Adams-Griffin v. Conduent Business Services, LLC*,
No. 2:25-cv-16953 ..........3

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ..........*passim*

*Hacker v. Elec. Last Mile Sols. Inc.*,
2024 WL 5102696 (D.N.J. Nov. 6, 2024) (Farbiarz, J.) ..........19

*In re HealthEC LLC Data Breach Litig.*,
2025 WL 1603267 (D.N.J. June 6, 2025) ..........20, 25, 35

*In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..........40

*Holden v. Guardian Analytics, Inc.*,
2024 WL 2845392 (D.N.J. June 5, 2024) ..........25

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012) ..........18

*Jones v. Com. Bancorp, Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) ..........17

*In re Linerboard Antitrust Litig.*,
321 F. Supp. 2d 619 (E.D. Pa. 2004) ..........28

*Maldini v. Marriott Int'l*,
140 F.4th 123 (4th Cir. 2005)....................24, 26

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022), *reversed on other grounds*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023)....................42

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
78 F.4th 677 (4th Cir. 2023)....................24, 26

*In re Marriott International Inc. Customer Data Security Breach Litigation*,
Case No. 8:19-md-02879 (D. Md.) ....................24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ....................32

*In re Nat'l Football League Players Concussion Inj. Litig.*,
821 F.3d 410 (3d Cir. 2016), *as amended* (May 2, 2016)....................19

*Pro v. Hertz Equip. Rental Corp.*,
2013 WL 3167736 (D.N.J. June 20, 2013) ....................26

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....................27, 41

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013)....................37

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 WL 1257722 (D.N.J. Mar. 26, 2010) ....................18

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)....................36

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020)....................38

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)....................39

*Theus v. Brinker, Int'l, Inc.*,
2025 WL 1786346 (M.D. Fla. June 27, 2025) ........................................24, 27

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
2023 WL 1818922 (D.N.J. Feb. 8, 2023)................................................37, 38

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) ..........................................................................36

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004) ..................27

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)..................................................................16, 27

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995) ...........................................................26

*Whelan v. Diligent Corp.*,
349 F.R.D. 79 (S.D.N.Y. 2025) ..............................................................31

*Woodward v. NOR–AM Chem. Co.*,
1996 WL 1063670 (S.D. Ala. May 23, 1996)..............................................25

**Statutes**

28 U.S.C. § 1404 .......................................................................................4

28 U.S.C. § 1407 .......................................................................................4

California Consumer Privacy Act ................................................................3

California Confidentiality of Medical Information Act ..................................3

California Customer Records Act ...............................................................3

HIPAA.................................................................................................1, 33

**Rules and Statutes**

45 C.F.R. Part 160 and Subparts A and C......................................................1

45 C.F.R. § 164.306(d)(3) ..........................................................................33

45 C.F.R. § 164.312(e) ........ 33

Fed. R. Civ. P. 23 ........ *passim*

Fed. R. Civ. P. 23(a) ........ 35

Fed. R. Civ. P. 23(a)(1) ........ 36

Fed. R. Civ. P. 23(a)(2) ........ 36

Fed. R. Civ. P. 23(a)(3) ........ 37

Fed. R. Civ. P. 23(a)(4) ........ 38, 43

Fed. R. Civ. P. 23(b) ........ 36

Fed. R. Civ. P. 23(b)(3) ........ 36, 39, 41, 42

Fed. R. Civ. P. 23(c)(2)(B) ........ 32, 35

Fed. R. Civ. P. 23(e) ........ 2, 16, 32

Fed. R. Civ. P. 23(e)(1) ........ 32

Fed. R. Civ. P. 23(e)(1)(B) ........ 17

Fed. R. Civ. P. 23(e)(2) ........ 1, 16, 17, 18

Fed. R. Civ. P. 23(e)(2)(A) ........ 18, 20

Fed. R. Civ. P. 23(e)(2)(B) ........ 21

Fed. R. Civ. P. 23(e)(2)(C) ........ 29

Fed. R. Civ. P. 23(e)(2)(C)(i) ........ 22

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........ 29

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........ 29, 30

Fed R. Civ. P. 23(e)(2)(C)(iv) ........ 29, 30

Fed. R. Civ. P. 23(e)(2)(D) ........ 31

Fed. R. Civ. P. 23(g) ........ 43, 44

Fed. R. Civ. P. 23(g)(1)(A) .......... 43

Fed. R. Civ. P. 23(h)(1) .......... 35

**Other Authorities**

5 James W. Moore et al., Moore's Federal Practice 23.21[3][d] (3d ed. 2013) .......... 42

*Manual for Complex Litigation*, §21.63 (4th ed. 2004) .......... 16

Pursuant to Fed. R. Civ. P. 23, Plaintiffs,[1] individually and on behalf of the proposed Settlement Class, respectfully submit this memorandum of law in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement[2] supported by the Joint Declaration of Class Counsel ("Counsel Decl."), attached as ***Exhibit B***.

## I. INTRODUCTION

Plaintiffs, on behalf of a proposed Settlement Class of approximately 62 million members, reached a nationwide Settlement with Conduent which includes monetary relief consisting of an $80,000,000.00 all cash non-reversionary common fund and valuable non-monetary relief involving ongoing security enhancements and commitments related to the requirements of HIPAA Security Rule (45 C.F.R. Part 160 and Subparts A and C of Part 164). All Settlement Class Members will be able to Claim a Cash Payment from the Settlement Fund and each will automatically receive Credit Monitoring or Medical Data Monitoring depending upon which Subclass they are in.

As detailed herein, the Settlement satisfies Fed. R. Civ. P. 23(e)(2) and *Girsh*

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement and Releases ("SA"), attached to the Motion for Preliminary Approval as ***Exhibit A***.

[2] Defendants do not admit any liability, nor do they admit the allegations set forth in the Complaint, Amended Complaint, or contained herein. Defendants expressly reserve all defenses and rights.

*v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Accordingly, the Court should preliminarily approve the Settlement; appoint the Class Representatives, Class Counsel, and Settlement Administrator; direct Notice to the Settlement Class; and enter all of the relief outlined herein and in the proposed Preliminary Approval Order.

## II. BACKGROUND

### A. Summary of the Class Claims

Conduent is a technology-enabled business process services and outsourcing company that manages high-volume, digital processing operations for businesses and governmental agencies. Counsel Decl. ¶ 10. The accompanying Counsel Declaration outlines in detail the complete background of the Action, the investigation counsel undertook into defendants and the claims against them, preparing for and attending mediation, and all of the other factors relevant to Rule 23(e). This brief will not repeat verbatim everything outlined in proposed Class Counsel's declaration but will, instead, show why the facts and proposed settlement easily satisfy the applicable analysis the Court must undertake under Rule 23.

This Action arises from a cyberattack on Conduent's network, which began on or about October 21, 2024, and continued until approximately January 13, 2025, in which an unauthorized third party accessed Conduent's systems and exfiltrated data files containing Private Information entrusted to Conduent by Conduent's clients. *Id.* ¶ 11. This type of data security case is often referred to as a hub-and-

spoke data breach in the sense that Conduent (the hub) suffered the Data Incident while in possession of Private Information provided to Conduent by Conduent's clients (the spokes). *Id.* ¶ 12. A hub-and-spoke case presents challenges different from, and more complex than, a straightforward case against a single defendant which was impacted by a security incident. *Id.*

Plaintiffs allege the threat actor, known as SafePay, exfiltrated approximately 8.5 terabytes of data from Conduent's network, including the Private Information of approximately 62 million individuals. *Id.* ¶ 13. The operative Amended Consolidated Class Action Complaint (ECF No. 157) alleges 16 causes of action against arising under common law negligence against Conduent and Conduent Defendant Clients and various state consumer protection statutes where applicable, including violation of the California Consumer Privacy Act, California Confidentiality of Medical Information Act, and California Customer Records Act. *See generally* ECF No. 157. Plaintiffs seek, among other relief, monetary damages, nominal damages, statutory damages, restitution, and injunctive relief. *Id.*

### B. Commencement of the Action, Investigation Into the Class's Claims, Appointment of Plaintiffs' Interim Class Counsel, and Filing of Consolidated Complaints

On October 27, 2025, a class action captioned *Erin Adams-Griffin v. Conduent Business Services, LLC*, No. 2:25-cv-16953, was filed in this District. Counsel Decl. ¶ 15. Plaintiff Adams-Griffin asserted claims against Conduent,

individually and on behalf of a nationwide class, each arising from the Data Incident. *Id.*; ECF No. 1. Related actions were filed in rapid succession over the next month against Conduent and the Conduent Defendant Clients. Counsel Decl. ¶ 16; *see* ECF No. 11 at n.1.

To avoid extended motion practice under either 28 U.S.C. § 1404 or 28 U.S.C. § 1407, Class Counsel cooperatively worked with lawyers around the country that filed cases against Conduent to reach a consensus on prosecuting the Action in this District. Counsel Decl. ¶ 17. This required dismissals of several actions and transferring others to this District. *Id.* The Court consolidated the related actions on November 24, 2025. ECF No. 19. After extensive work by Class Counsel, a consensus plaintiffs' side leadership proposal was reached, which the Court approved. *Id.* ¶¶ 21-22; ECF No. 91.

Between those appointments and filing the Consolidated Class Action Complaint on March 18, 2026 (ECF No. 136), Class Counsel undertook substantial and complex efforts to investigate and develop a unified litigation strategy for what ultimately became a 264-page Consolidated Class Action Complaint. Counsel Decl. ¶ 23. This work included reviewing and analyzing all filed complaints and prospective actions; identifying, vetting, and communicating with hundreds of prospective named plaintiffs nationwide; consulting with liability and damage experts; evaluating standing, injury, typicality, and adequacy considerations;

determining the appropriate litigation structure, including the hub-and-spoke nature of the data-sharing relationships among Conduent and its consumer facing insurer clients; investigating the relationship between Conduent and each Conduent Defendant Client; coordinating numerous plaintiffs' firms efforts to represent the putative classes; collecting and reviewing data-breach notices, regulatory filings, public reports, insurer disclosures, corporate statements, SEC filings, and cybersecurity publications; researching the SafePay ransomware attack, the scope of the Data Incident, the categories of information compromised, and the evolving victim counts; analyzing potential state and federal causes of action; identifying applicable state-law subclasses and representative plaintiffs; drafting, revising, and harmonizing allegations originating from numerous constituent complaints; and developing a cohesive pleading strategy designed to maximize recovery. *Id.* All of that work culminated in the Consolidated Class Action Complaint that required multiple rounds of drafting and revision. *Id.*

Between the filing of the Consolidated Class Action Complaint on March 18, 2026 (ECF No. 136), and the filing of the Amended Consolidated Class Action Complaint on June 12, 2026 (ECF No. 157), Class Counsel continued to investigate the facts and legal issues, and ultimately amended the operative pleading to remove California Physicians' Service d/b/a Blue Shield of California as a defendant, and replace American International Group, Inc. with American International Group

Procurement Services, Inc. as the named defendant. *Id.* ¶ 24.

### C. Plaintiffs' Discovery Efforts and Expert Work

Shortly after the Action began, Class Counsel and Plaintiffs' Steering Committee actively prepared for discovery and commenced work with a focus on class certification and an eventual trial. *Id.* ¶ 25. For example, Class Counsel prepared 90 Requests for Production and 25 Interrogatories to Defendant Conduent, and 55 Requests for Production and 25 Interrogatories to each Conduent Defendant Client. *Id.* Public records requests were made to government agencies about the Data Incident. *Id.* Class Counsel also prepared a Confidentiality Order and ESI Protocol, which were circulated to Conduent's counsel for review on May 20, 2026. *Id.*

At the same time, Class Counsel engaged and worked continuously with their liability and damages experts. *Id.* ¶ 26. These experts included a former federal law enforcement officer experienced in cybercrime that assisted Class Counsel in understanding the nature and scope of the Data Incident, as well as SafePay's background and history of cybercrime. *Id.* Liability experts were engaged to begin evaluating defendants' acts and omissions that lead to the Data Incident. *Id.* Class Counsel also engaged the necessary damages experts, including to value the compromised Private Information and a separate damages analysis for necessary future and continued monitoring costs. *Id.*

To efficiently chart the course for discovery and coalesce around a strategy to

pursue the litigation, Class Counsel, the Steering Committee, and other plaintiffs' counsel met weekly by Zoom. *Id.* ¶ 27. They met in person on three occasions in New York and New Jersey to coordinate various litigation activities and had several discussions with Conduent's counsel to discuss the litigation and prospect for resolution. *Id.* Plaintiffs' experts joined meetings as needed, and Class Counsel was prepared to fully litigate the Action at the time of Settlement. *Id.*

### D. The Parties' Extensive Pre-Mediation Efforts

Before filing the Consolidated Class Action Complaint, Class Counsel actively worked with Conduent and the Conduent Defendant Clients to address procedural and merits issues relating to Plaintiffs' claims. *Id.* ¶ 28. For example, Class Counsel consulted with several of the Conduent Defendant Clients regarding their relationships with Conduent, and whether they had indemnification agreements that would weigh on the potential resolution of the Action. *Id.* Class Counsel evaluated the prospect of these indemnification claims from the Conduent Defendant Clients against Conduent as well as Conduent's financial condition in publicly reported SEC filings as significant factors weighing on any efforts to resolve the litigation. *Id.* ¶ 29.

Given Conduent's publicly stated financial condition, Class Counsel pursued a comprehensive examination of Conduent's ability to pay a judgment in this case. *Id.* ¶ 30. First, Class Counsel undertook an extensive analysis of Conduent's

securities filings to understand its cash position, its role and position in the market for its services, and prospects for the future. *Id.* Second, Class Counsel engaged a business valuation expert who examined Conduent's public filings and conducted a more complex investigation of Conduent's access to capital, how Conduent was leveraged, and the risk of any Chapter 7 or 11 proceedings in the event of a significant judgment. *Id.*

During this period, Class Counsel continued to research and prepare to respond to Conduent's and the Conduent Defendant Clients' anticipated motions to dismiss. *Id.* ¶ 31. As defendants' deadline to move to dismiss approached, the Parties agreed to mediate. Importantly, the parties agreed to postpone the operative motion deadlines primarily to preserve funds available under Conduent's insurance policies. *Id.* The mediation was intended to explore a comprehensive resolution of the Action and was conditioned on Conduent providing key information to allow Class Counsel to make an informed analysis of any proposed settlement. *Id.* ¶¶ 32-33. Specifically, Plaintiffs requested detailed information from Conduent, including: (a) its insurance tower; (b) its internal investigation into the root cause of the Data Incident; (c) a granular breakdown of the type of data exfiltrated; (d) the domiciles and size of the putative class; (e) Conduent's financial condition and ability to pay; and (f) the Conduent's clients interaction and oversight of Conduent's data security practices. *Id.* ¶ 33. Conduent responded to these requests and numerous others, allowing Class

Counsel to meaningfully approach the mediation with sufficient information to value the claims asserted and the risks of continuing litigation against Conduent and the Conduent Defendant Clients. *Id.* ¶ 34.

At the same time, Conduent requested information from the representative Plaintiffs to inform its mediation efforts, serving 13 specific requests on Plaintiffs, to which Plaintiffs provided written responses and produced documents on August 5, 2026. *Id.* ¶ 36. While engaging in this pre-mediation discovery, Class Counsel also devoted substantial time preparing a detailed mediation brief designed to present Plaintiffs' claims in the best possible light and maximize recovery for the putative class. *Id.* ¶ 38. Preparing the brief required extensive legal research concerning Conduent's and the Conduent Defendant Clients' anticipated motions to dismiss and other defenses; factual investigation into the circumstances of the Data Incident, Conduent's and the Conduent Defendant Clients' cybersecurity practices, and Conduent's and the Conduent Defendant Clients' delayed notification efforts; review of comparable data-breach settlements, class-certification decisions, and dispositive rulings; and analysis of liability, class-certification, and damages issues. *Id.*

Class Counsel also worked closely with their retained expert consultants to respond to issues concerning liability, damages, and the risk of continuing harm to individuals impacted by the Data Incident. *Id.* In advance of mediation, Plaintiffs

served their 22-page mediation brief with 306 pages of exhibits on Conduent. *Id.* ¶ 39. Likewise, Conduent served its 21-page mediation brief with 25 pages of exhibits. Class Counsel closely analyzed Conduent's mediation brief, along with Conduent's pre-mediation discovery responses, in advance of the mediation. *Id.*

### E. Mediation, Settlement Negotiations, and Settlement Terms

The Parties participated in an all-day mediation on August 13, 2026, with a highly experienced former United States Magistrate Judge, Hon. Diane Welsh. *Id.* ¶ 40. And, as noted, the mediation did not occur in a factual vacuum. *Id.* ¶ 41. To the contrary, given the parties' extensive pre-mediation work and experience, all parties were fully equipped to assess the strengths and weaknesses of their respective positions. *Id.* Importantly, the mediation was not simply an exercise in exchanging numbers or proposals. *Id.* ¶ 42. Rather, each side made extensive presentations to each other, including client representatives, and, most importantly, Conduent provided additional information, including an extensive presentation and documentary evidence detailing the Data Incident, its investigation, the notification process, and additional financial information, all to allow Class Counsel to further understand the claims and defenses at issue and the risks attendant to further litigation. *Id.* At the conclusion of mediation, the Parties accepted Judge Welsh's mediator's proposal for an $80,000,000.00 all cash non-reversionary common-fund and Conduent's commitment for improved data security. *Id.* ¶ 43.

After mediation, Class Counsel enacted a competitive bid process to obtain proposals from prospective settlement administrators to handle notice and claims administration. *Id.* ¶ 44. Class Counsel received and analyzed proposals for four administrators, including a proposal from CyEx, Inc., a well-established credit and medical data monitoring provider. *Id.* Over the following weeks, the Parties' counsel negotiated and drafted the Settlement terms, Notice Program, and Claim Process. *Id.* ¶ 45. They drafted and prepared the Settlement Agreement, worked with the chosen settlement administrator to prepare the Notices and Claim Form, and prepared the proposed Preliminary Approval Order and Final Approval Order. *Id.* After finalizing the Settlement Agreement, the Parties executed it on October 16, 2026. *Id.*

## III. SUMMARY OF THE SETTLEMENT

### A. Settlement Class and Subclasses

Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> All individuals residing in the United States who are on the Class List and were provided actual or substitute notice by Conduent and/or its clients that their Private Information may have been affected by the Data Incident.

SA ¶ 68. Excluded from the Settlement Class are: (1) Conduent, any entity in which Conduent has a controlling interest, and Conduent's officers, directors, legal representatives, successors, subsidiaries, and assigns; (2) any Settlement Class Member who properly and timely opt-out of the Settlement Class; (3) the Court, the

Judge's immediate family, and Court staff; and (4) all individuals who on or before the filing of Plaintiffs' Motion for Preliminary Approval released their claims against the Released Parties. *Id.*

The Settlement Class has two Subclasses. Subclass A consists of approximately 40 million Settlement Class Members whose Private Information was maintained in a complex manner such that it was not readily accessible to third parties other than Conduent. *Id.* ¶ 72. Subclass B consists of approximately 22 million Settlement Class Members whose Private Information was stored in files wherein the data was more readily accessible to third parties. *Id.* ¶ 73.

### B. Settlement Fund and Settlement Class Member Benefits

The Settlement Fund is all cash, with no reverter. It provides Settlement Class Members the opportunity to claim cash relief and, importantly, will be used to automatically purchase Credit Monitoring or Medical Data Monitoring for *all* Settlement Class Members. *Id.* ¶ 71, 78-79. The Settlement Fund will also be used to pay all Settlement Administration Costs and any Court-approved Service Awards and Attorneys' Fees and Costs. *Id.* ¶ 79.

***Monitoring***. All Settlement Class Members will automatically, without having to submit a Claim, receive one year of one bureau Credit Monitoring or Medical Data Monitoring services with a number of beneficial features including $1,000,000.00 in insurance with no deductible, provided through CyEx, Inc. *Id.*

¶ 92. Subclass A Members will receive Credit Monitoring ("Financial Shield Complete"), which includes monitoring of bank, investment, and credit-card accounts, monthly spending tracking, monitoring of up to five home and property titles, high-risk transaction monitoring, and dark-web scanning. *Id.* It has a retail cost of $179.40 per individual per year. Subclass B Settlement Class Members will receive Medical Data Monitoring ("Medical Shield Complete"), which also includes monitoring of dark-web and public-web marketplaces that traffic in medical information. *Id.* It has a retail cost of $179.40 per individual per year.

***Cash Payment for Documented Losses***. All Settlement Class Members may submit a Claim for reimbursement of documented, unreimbursed out-of-pocket losses related to fraud and/or identity theft stemming from the Data Incident, up to $3,500.00 each. *Id.* ¶ 93. To qualify, a loss must be an actual, documented, and unreimbursed monetary loss that was incurred after the Data Incident and more likely than not was caused by the Data Incident. *Id.* The loss must be supported by reasonable documentation submitted with the Claim Form. *Id.*

***Pro Rata Cash Payment***. In addition to a Cash Payment for Documented Losses, Subclass B Settlement Class Members may also elect to receive a Pro Rata Cash Payment, the amount of which will be based on the amount of funds remaining in the Net Settlement Fund. *Id.* ¶ 94. All Subclass B Settlement Class Members who elect this benefit and submit a Valid Claim will receive the same amount of cash

from the Net Settlement Fund, subject to the California Statutory Payment, which is a 20% upward adjustment in the Pro Rata Cash Payment to Subclass B Settlement Class Members residing in California on October 21, 2024. *Id.* By way of example, a Pro Rata Cash Payment for a non-California Subclass B Settlement Member in the amount of $50.00 will result in a Subclass B Settlement Subclass Member from California receiving a payment in the amount of $60.00. *Id.* Those claiming the California Statutory Payment must attest under penalty of perjury that they resided in California on the day of the Data Incident. *Id.* The amount of cash to distribute from the Net Settlement Fund will not be known until all Claims for Cash Payments for Documented Losses are validated and until the Court awards Attorneys' Fees and Costs and Service Awards. *Id.* Thereafter, the amount of each Subclass B Settlement Class Member's distribution will be based on the total number of Valid Claims for Pro Rata Cash Payments. *Id.*

***Representations and Enhancements***. Conduent has agreed to make ongoing security enhancements and to provide Class Counsel with a confidential declaration detailing those actions. *Id.* ¶ 95.

### C. Releases

Plaintiffs and Settlement Class Members who do not opt-out will release Conduent, Conduent's clients, any customer of or contractual downstream entity to Conduent's clients, and other individuals and entities, as detailed in the Releases

section of the Settlement Agreement. *Id.*, § XIV. The narrowly tailored Releases do not impair the Court's authority to enforce the terms of the Settlement. Counsel Decl. ¶ 3.

**D. Notice Program and Claim Process**

The Parties have agreed to provide Notice to the Settlement Class by way of Email Notice, Reminder Email Notice, Long Form Notice, and Publication Notice. SA, Exs. 1-3 (Email Notice, Reminder Email Notice, and Long Form Notice). Epiq Class Action & Claims Solutions, Inc., the proposed Settlement Administrator, shall implement the Notice Program and Claim Process. *Id.* ¶ 98. The Agreement details the Settlement Administrator's duties, the Notice Program (including the opt-out and objection procedures), and the robust Claim Process for Cash Payments. *Id.* ¶¶ 98-135.

**E. Attorneys' Fees, Costs, and Service Awards**

The Agreement also details the terms for any proposed Attorneys' Fees and Costs and Service Awards that the Court must approve. By the deadline the Court sets, the Motion for Attorneys' Fees, Costs, and Service Awards will seek an award, as is authorized by well-settled law, of attorneys' fees of up to 34% of the $80,000,000.00 Settlement Fund; reimbursement of costs; and Service Awards for the Class Representatives not to exceed $1,500.00 each. *Id.* ¶¶ 138-139; Counsel Decl. ¶¶ 89, 92. The Notices will inform the Settlement Class of these amounts, and

they will have ample opportunity to review the Motion for Attorneys' Fees, Costs, and Service Awards to submit any objections they may have before the Final Approval Hearing. *Id.* ¶ 89.

## IV. LEGAL STANDARD

Court approval for any compromise of claims brought on a class basis is required. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of a class action is both favored and encouraged. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

The *Manual for Complex Litigation* describes a three-step class action settlement approval process: preliminary approval of the proposed settlement; dissemination of notice of the settlement to class members; and a final approval hearing. *See Manual for Complex Litigation*, §21.63 (4th ed. 2004) ("*Manua*l"). At this juncture, Plaintiffs request the Court take the first and second steps by entering the proposed Preliminary Approval Order and ordering the dissemination of Notice to the Settlement Class.

Under Rule 23(e), preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the

class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class.").

Fed. R. Civ. P. 23(e)(2) provides:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

In addition, courts in this Circuit look to the traditional factors utilized in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement, many of which overlap with Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ;

> (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . .

*Burrows v. DC Portfolio Servs., LLC*, 2025 WL 2304797, at *9 (D.N.J. Aug. 11, 2025) (citing *Girsh*, 521 F.2d at 157). The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010) (citation omitted).

Here, Plaintiffs and Class Counsel submit that the Rule 23(e)(2) and *Girsh* factors are easily satisfied.

## V. ARGUMENT

### A. Preliminary Approval of the Settlement Is Appropriate

The proposed Settlement is fair, reasonable, and adequate. For the reasons set forth below, Preliminary Approval of the proposed Settlement should be granted.

#### 1. Plaintiffs and Plaintiffs' Interim Class Counsel Have Adequately Represented the Settlement Class

The first two factors under Rule 23(e)(2) are the adequacy of representation and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *See*

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) ("[A] presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors."). As the Third Circuit recognizes:

> As with the presumption of fairness, formal discovery is not a requirement for the third *Girsh* factor. What matters is not the amount or type of discovery class counsel pursued, but whether they had developed enough information about the case to appreciate sufficiently the value of the claims. Moreover, requiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip—the costs of formal discovery itself—off the table during negotiations. This could deter the early settlement of disputes.

*In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 439 (3d Cir. 2016), *as amended* (May 2, 2016).

"Representative plaintiffs provide adequate representation of a class where the 'named plaintiffs' interests are sufficiently aligned with' absent class members." *Hacker v. Elec. Last Mile Sols. Inc.*, 2024 WL 5102696, at *7 (D.N.J. Nov. 6, 2024) (Farbiarz, J.) (citation omitted). Here, the Plaintiffs have no interests adverse or antagonistic to absent Settlement Class Members. Counsel Decl. ¶ 75. Plaintiffs are all individuals whose Private Information may have been impacted by the Data Incident and who allege that Conduent and its clients were negligent in allowing the Data Incident to occur. *Id.* Moreover, the representative Plaintiffs have all been actively engaged in the litigation and, in preparation for mediation, responded to

informal discovery requests, and have remained involved during the settlement process. *Id.* They have amply fulfilled their duties to all absent class members. *Id.*

There is also no question that Class Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Action for the proposed Settlement Class, including, *inter alia*, by drafting detailed complaints, including the operative Amended Consolidated Complaint; preparing a Confidentiality Order and an ESI Protocol; preparing detailed discovery requests, including requests for production and interrogatories to be served on Conduent and the Conduent Defendant Clients; issuing public records requests to relevant government agencies, conferring with them regarding their responses, and reviewing public records they produced; engaging and working with experts on the issues of liability, damages, and Conduent's financial condition; engaging in extensive pre-mediation informal discovery and participating in extensive settlement negotiations, both prior to and after mediation; and confirmatory discovery following mediation. Counsel Decl. ¶¶ 23, 25-66. *See also In re HealthEC LLC Data Breach Litig.*, 2025 WL 1603267, at *9 (D.N.J. June 6, 2025).

Further, and as detailed in Class Counsel's declaration and resumes, each of the firms prosecuting this Action have extensive experience prosecuting class actions in general, and data security cases in particular. Counsel Decl. ¶ 22; ECF

Nos. 29-1–29-4. They are among the most experienced data privacy lawyers in the country and, as such, they have a wealth of experience and knowledge which informed each of their decisions regarding this litigation and the proposed settlement.

#### 2. The Proposed Settlement Was Negotiated at Arm's Length

Rule 23(e)(2)(B) evaluates whether the proposed settlement "negotiations occurred at arms length." *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.* ("*GMC Truck*"), 55 F.3d 768, 785 (3d Cir. 1995)). This factor is also easily satisfied. In addition to direct negotiations between counsel, a full-day mediation took place in Philadelphia, Pennsylvania, before experienced class action mediator United States Magistrate Judge Diane M. Welsh (Ret.) of JAMS, where a settlement was reached in principle. *See* Counsel Decl. ¶ 40. Direct participation of an experienced mediator further ensures that the negotiations were non-collusive and conducted properly. *See, e.g.*, *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'") (citation omitted).

In these negotiations, each side had full knowledge of the crucial issues, and they involved numerous telephone calls, e-mails, and an in-person meetings between

counsel before and after mediation. Counsel Decl. ¶¶ 25-66. These negotiations were difficult, adversarial, and vigorously executed by both sides. *Id.* ¶ 40. For its part, Conduent is represented by highly sophisticated counsel with extensive experience in data breach litigation. *Id.* There is no evidence that any collusion or illegality existed during settlement negotiations. *Id.*

### 3. Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal would inevitably impose.[3] *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i) *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on risks). These factors weigh in favor of Preliminary Approval of the Settlement.

Although Plaintiffs believe the claims asserted in the Action are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against Conduent and the Conduent Defendant Clients poses significant risks that make any recovery for the Settlement Class uncertain. Counsel Decl. ¶¶ 46-66. The Settlement's fairness is underscored by consideration of the obstacles the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and

[3] The second *Girsh* factor, the reaction of the class to the Settlement, does not yet apply, and will be addressed at the Final Approval stage after the Settlement Class Members have been given Notice of the Settlement and an opportunity to be heard.

likely duration of the litigation. *Id.* In addition, given Conduent's financial condition and the prospect of indemnity obligations to its clients (including the Conduent Defendant Clients), continued litigation against Conduent is likely to present meaningful collection and enforcement risks. *Id.* ¶¶ 47-53.

Continued litigation also presents substantial risks with respect to establishing liability and damages against the Conduent Defendant Clients. *Id.* ¶ 71. In particular, the claims against the Conduent Defendant Clients were based on the notion that each of them failed to adequately oversee Conduent's data security practices when entrusting Conduent with customer data. *Id.* ¶ 59. But, in the mediation, the Parties exchanged information reflecting that those defendants had exercised at least sufficient diligence such that the issue would certainly be one for a jury to ultimately adjudicate.

Further, when the Settlement was reached, neither Conduent nor the Conduent Defendant Clients had filed a motion to dismiss, and the Court had not yet evaluated the sufficiency of Plaintiffs' claims. *Id.* ¶ 61. Accordingly, Plaintiffs faced the risk that one or all claims, causes of action, putative classes, or categories of relief could be narrowed or dismissed through motion practice. *Id.* Assuming claims survived the motion to dismiss process, significant litigation hurdles remained, including summary judgment and class certification.

When considering this factor, it is important to highlight that data breach cases

are different from cases involving uniform federal statutes and legal principles. A data breach class certification motion often requires complicated choice of law analysis leading to class certification requests grouping states together into subclasses. And, the uniformity of damages and damage models are always contested and subject to expert testimony. Put simply, class certification is no certainty in data breach class actions. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, 2025 WL 1786346 (M.D. Fla. June 27, 2025). Moreover, because of the evolving nature of the case law pertaining to data protection, it is likely that a win by either Plaintiffs or defendants would result in interlocutory and final appeals, further increasing costs and extending the time until Plaintiffs and putative class members can have a chance at relief. *Id.* ¶ 50.

Nor is it a given in any case, data privacy in particular, that litigating a case for years necessarily translates into an opportunity for greater recoveries for class members. The opposite is often true even after counsel have invested years of work and millions of dollars in out-of-pocket costs. *See, e.g.*, *Crowe, et al. v. Managed Care of North America, Inc.*, *et al.*, Case No. 23-cv-61065-AHS (S.D. Fla.) (providing documented losses and two years of medical data monitoring as settlement benefits after 3 years of litigation); *In re Marriott Int'l, Inc. Customer Data Security Breach Litig.*, Case No. 8:19-md-02879 (D. Md.) (resolving without

a class action settlement after seven years of litigation). Avoiding the risks involved with further litigation, the Settlement provides Settlement Class Members with the opportunity to immediately receive significant benefits. Counsel Decl. ¶ 60; *see also Cunningham v. DG3 N. Am., Inc.*, 2025 WL 2919331, at *5 (D.N.J. Oct. 14, 2025) (approving the settlement and finding reimbursement for documented losses or an alternative cash payment and credit monitoring to be "direct benefits" to the settlement class); *Holden v. Guardian Analytics, Inc.*, 2024 WL 2845392, at *7 (D.N.J. June 5, 2024) (same).

Put simply, the risks of continued litigation in these cases are real and known to experienced counsel. "[A]s many courts have already recognized, data breach litigation is long, complicated and expensive." *In re HealthEC LLC Data Breach Litig.*, 2025 WL 1603267, at *9. As in *HealthEC*, "[t]his settlement, relatively early in the litigation, avoids delay, risk and expense, and affords class members real relief." *Id.* This risk calculus performed by experienced counsel certainly weighs in favor of Preliminary Approval.

A settlement is also not only beneficial to all parties, but the Court as well. *See Woodward v. NOR–AM Chem. Co.*, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489,

493 (11th Cir. 1992)). Indeed, avoiding a multi-year, complex litigation weighs in favor of Preliminary Approval.

*Girsh* factor 4 examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *GMC Truck*, 55 F.3d at 814. In considering this factor, this Court has recognized that "[a] trial on the merits always entails considerable risks." *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (quoting *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995)). And "no matter how confident one may be of the outcome of the litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007).

Although Class Counsel believe the claims presented in the Action are meritorious, they are experienced counsel who understand "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. As already noted, those risks have materialized negatively in other data breach litigation at the class certification stage. *See, e.g.*, *Maldini v. Marriott Int'l*, 140 F.4th 123 (4th Cir. 2005); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 78 F.4th 677 (4th

Cir. 2023); *Theus v. Brinker, Int'l, Inc.*, 2025 WL 1786346. The Settlement provides certainty to the Settlement Class and substantial relief now.

Similarly, *Girsh* factor 5 "attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001) (quoting *GMC Truck*, 55 F.3d at 816). The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *See In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998). In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "'[d]amages would likely be established at trial through 'a battle of experts,' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002) (citation omitted), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004). Here, again, this is a real eventuality in a hard-fought data breach litigation.

To this point, in this District alone, a large complex hub-and-spoke data breach continues before the Court after almost eight years of litigation. *See In re American Medical Collection Agency, Inc., Customer Data Security Breach Litig.*, No. 2:19-md-2904-JKS-ADS (D.N.J.). The metaphor of birds and bushes certainly appertains when considering real life precedents in a complex data breach case.

The *Girsh* factors 7-9 consider the defendant's ability to withstand a greater

judgment and the range of reasonableness of the settlement relief in light of the best possible recovery and litigation risks. In this Action, these factors weigh strongly in favor of approving the Settlement. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004) (defendant's plant closures, workforce reductions, quarterly losses, and the settlement was greater than the defendant's earnings and profits in preceding three years); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (ability to withstand greater judgment to be "the dominant consideration favoring settlement" because "there was great risk that even if the class were able to obtain a successful verdict, it would have resulted in an uncollectible judgment").

Here, after conferring with a corporate valuation expert and conducting an extensive analysis, it is Class Counsel's judgment that Conduent could not withstand a larger judgment. It has reported double-digit year-over-year revenue declines, substantial losses, negative cash position, and substantial debt obligations in 2026, necessitating a broad restructuring initiative including the sale of its Transit and Tolling businesses. Counsel Decl. ¶ 49. The Settlement Fund is greater than Conduent's earnings in the past three years, by *double* that amount. *Id*. Moreover, the Settlement Fund represents approximately one-third of Conduent's *total company value*. *Id*.

This concrete financial metric clearly evidences the outstanding nature of the

proposal before the Court. It recovers the maximum amount of nearly all available cash, while simultaneously avoiding both inherent litigation risks and Conduent's real world financial situation. Also, a comparison of other court-approved data breach settlements demonstrates this Settlement is not out of step with other settlements of similar size. Counsel Decl. ¶ 70. This is especially true where, as here, Conduent is in financial distress and approximately 40 million Settlement Class Members' data was stored in complex backup files such that the data was not readily accessible by third parties. *Id.* ¶ 4. In sum, accounting for the risks and uncertainties of continued litigation against the significant Settlement benefits, the Settlement easily meets the threshold for reasonableness. *See Girsh*, 521 F.2d at 157.

#### 4. The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors for consideration: the effectiveness of the proposed method for distributing relief; the terms of the proposed attorneys' fees; and the existence of any other "agreement[s]." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors are readily met.

The method and effectiveness of the proposed Notice Program and Claim Process (Rule 23(e)(2)(C)(ii)) are sufficient. The Notice Program includes direct Email Notice and Reminder Email Notice, and Publication Notice to reach Settlement Class Members for whom emailed addresses are not available or obtained. SA ¶¶ 103-113. Also, a toll-free hotline will be active and a Settlement

Website live on the date of Notice Commencement. *Id.* ¶ 100.e. Key documents will be posted on the website, including the Settlement Agreement, Long Form Notice, Claim Form, Motion for Preliminary Approval, and Preliminary Approval Order, Motion for Final Approval, and Motion for Attorneys' Fees, Costs, and Service Awards. *Id.* ¶ 107.

No claims need be made for Monitoring because access codes for the service will automatically be provided. The Claim Process for Cash Payments is straightforward and easy for Settlement Class Members to submit Claims. Counsel Decl. ¶ 87. It will be managed by Epiq, one of the most experienced and respected settlement administrators in the nation.

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement provides that Plaintiffs' Co-Lead Counsel will apply for an award of attorneys' fees and costs 70 days after Notice Commencement. This will give adequate time for Settlement Class Members to file any objections to the motion. As set forth in the proposed Notices, Co-Lead Counsel will request reasonable attorneys' fees up to 34% of the Settlement Fund and litigation costs.

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. All of the Parties' agreements are in the Settlement Agreement. Counsel Decl. ¶ 8.

### 5. Settlement Class Members Are Treated Equitably

Finally, Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to one another. Here, the Settlement is fair, reasonable, and adequate because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. All Settlement Class Members will automatically receive the Monitoring product that fits their circumstances. If Settlement Class Members are able to document and support entitlement to such relief, each Settlement Class Member is eligible to submit a Claim for a Cash Payment for Documented Losses.

Similarly, Pro Rata Cash Payments will be equitably distributed to similarly situated class members. Subclass B Settlement Class Members (whose Private Information was stored in files wherein the data was more accessible) may elect to receive a Pro Rata Cash Payment consisting of an equal share of the Net Settlement Fund. Subclass B Settlement Class Members who resided in California on October 21, 2024, will be eligible for a 20% upward adjustment of their Pro Rata Cash Payment to account for the relative strength of the claims for Settlement Class Members from California. This upward adjustment for California citizens in light of the California statutory claims has been accepted and approved in many prior cases. *See, e.g.*, *Whelan v. Diligent Corp.*, 349 F.R.D. 79, 87 (S.D.N.Y. 2025) (settlement providing California settlement subclass members additional compensation for

releasing California state law claims that "only they may raise" "treats class members equitably relative to each other"); *Chabak v. Somnia Inc.*, 2024 WL 4098620, at *1 (S.D.N.Y. Sept. 3, 2024) (increased *pro-rata* shares to California subclass members to account for their CMIA claim "treats the Class and the California Subclass equitably relative to each other"). The amount of each Subclass B Settlement Class Member's distribution will be determined after all Pro Rata Cash Payment Claims are validated.

### B. The Proposed Notice Program Satisfies Rule 23 and Due Process

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement must be the "best notice practicable." Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The Notice Program provides the best notice practicable under the circumstances. With the Settlement Administrator's assistance, the Notice Program was carefully created. The Settlement Administrator will provide direct notice by

Email Notice and Reminder Email Notice to Settlement Class Members on the Class List for whom email addresses are available or obtained by the Settlement Administrator, supplemented by Publication Notice to help capture additional Settlement Class Members who do not receive direct Notice. Counsel Decl. ¶ 82. The Settlement Administrator will take industry acceptable measures to reach Settlement Class Members for whom email addresses are not available by using the information provided in the Class List to research and identify email addresses. SA ¶ 105; Counsel Decl. ¶ 82. In addition, the Settlement Administrator will administer the Settlement Website containing relevant information about the Settlement and toll-free telephone line. SA ¶ 100.d.-e.; Counsel Decl. ¶ 82. The Long Form Notice, Claim Form, and other key documents will be available on the Settlement Website and on request to the Settlement Administrator. SA ¶ 100.b.; Counsel Decl. ¶ 82.

Plaintiffs also move that notification of the Settlement in this Action be provided by unencrypted email. Consistent with the Qualified HIPAA Protective Order entered by the Court (ECF No. 170), the use of encryption is not reasonable and appropriate within the meaning of 45 C.F.R. § 164.312(e) and 45 C.F.R. § 164.306(d)(3), because: (i) the Settlement notification emails will contain only a limited amount of individually identifiable information, namely the recipient's email address and information about the Settlement as required by the Court; (ii) the notification emails will not contain any medical records, treatment information,

diagnoses, or other detailed Protected Information; (iii) the notification emails will direct recipients to a secure website through which Settlement Class Members may obtain further information and submit Claims; and (iv) requiring encryption of such notification emails would create unnecessary confusion among recipients and materially impede Settlement Class Members' ability to participate in the Settlement, thereby undermining the purpose of providing Notice. Thus, unencrypted email to send the Email Notice and Reminder Email Notice is reasonable and appropriate under the circumstances and constitutes the best notice practicable to reach the greatest number of Settlement Class Members and facilitate their receipt of the benefits of the Settlement.

The Notice Program complies with Rule 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the Action; (2) the essential terms of the Settlement, including the definition of the Settlement Class, the claims asserted, and the Settlement Class Member Benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for submitting objections and opt-out requests, including the time and method for objecting or opting out and that Settlement Class Members may make an appearance through counsel; (5) information regarding Class Counsel's request for attorneys' fees, costs, and Service Awards; and (6) how to make inquiries. *See* Fed. R. Civ. P. 23(c)(2)(B). Moreover, Rule 23(h)(1) requires

that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed Notice Program satisfies Rule 23(h)(1). The Notices state Class Counsel will apply for an award of attorneys' fees of no more than $27,200,000.00 which represents 34% of the $80,000,000.00 Settlement Fund, plus an award of litigation costs. SA, Exs. 1-3.

Accordingly, the Notice Program and Notices are designed to be the best practicable under the circumstances, apprise Settlement Class Members of the pendency of the Action, and give them an opportunity to object or exclude themselves from the Settlement. *See In re HealthEC LLC Data Breach Litig.*, 2025 WL 1603267, at *12-13 (approving email notice and publication notice as best practicable and satisfying due process). Thus, the Notice Program and Notices should be approved.

### C. The Court Should Certify the Settlement Class and Subclasses

Plaintiffs request that the Court certify a Settlement Class, including the Subclasses A and B, for settlement purposes only. The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Plaintiffs must satisfy all of Rule 23(a) requirements (numerosity, commonality, typicality, and adequacy) and at least one

Rule 23(b) requirement. Plaintiffs seek Rule 23(b)(3) certification, which requires a showing that common questions of law or fact predominate over any individual issues and class treatment is the superior method for efficiently handling the case. *See* Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

***Numerosity.*** Numerosity requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Third Circuit holds that class sizes exceeding 40 are typically sufficient to satisfy this requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the Settlement Class definition encompasses approximately 62 million Settlement Class Members, the joinder of whom in one action would certainly be impracticable. Counsel Decl. ¶ 72. Thus, the numerosity element is satisfied.

***Commonality***. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where the claims "depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Commonality is met where "the claims at issue . . . implicate[d] a 'uniform course of conduct common to all class members subject to common proof in a single trial.'" *C.P. v. New Jersey Dep't of Educ.*, 2022 WL 3572815, at *6 (D.N.J. Aug. 19, 2022)

(citation omitted). "That burden is not onerous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 381 (3d Cir. 2013).

Here, commonality is met. Numerous common issues exist. Counsel Decl. ¶ 73. For example, Conduent's data security safeguards were common across Settlement Class Members, and those safeguards applied to one Settlement Class Member's Private Information did not differ from the rest of the Settlement Class. *Id.* This and other common questions alleged in the Consolidated Complaint are central to the claims, will generate common answers, and can be addressed on a class-wide basis. *Id.*

***Typicality.*** To satisfy the Rule 23(a)(3) typicality, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This analysis focuses on "whether the interests of the named plaintiffs align with those of the unnamed members . . . and, explicitly, whether the claims and facts of class representatives are sufficiently like those of unnamed class members." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *9 (D.N.J. Feb. 8, 2023). Plaintiffs establish typicality when "the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Arbitrage Fund v. Toronto-Dominion Bank*, 2023 WL 5550198, at *4 (D.N.J. Aug. 29, 2023). However, a class representative's claims need not be

identical to those of absent class members, as "fact differences alone between the named and unnamed plaintiffs do not render a claim atypical so long as the named plaintiffs' claim arises from the same events, practices, or course of conduct of the defendants as for all class members, and is based upon the same legal theory." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *9.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident. Counsel Decl. ¶ 74. Moreover, all claims implicate Conduent's organization-wide cybersecurity practices and course of conduct, which necessarily applied uniformly across all Plaintiffs and Settlement Class Members. *Id.* Thus, Plaintiffs' claims are typical, and the typicality requirement is satisfied.

***Adequacy of Representation.*** The adequacy requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020). "For a class representative to be adequate, it must have a minimal degree of knowledge about the case, and have no conflict of interest with class counsel, and members of the class." *Id.* "Only 'fundamental' conflicts 'will defeat the adequacy requirement.'" *Id.* Here, Plaintiffs have no conflicts with the Settlement Class and have actively participated in the Action. Counsel Decl. ¶ 75. Plaintiffs have also

adequately prosecuted this action through Class Counsel, which is comprised of attorneys with significant experience litigating class and other complex cases, especially in the data privacy context. *Id.* ¶ 22.

***Predominance and Superiority.*** Rule 23(b)(3) requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

In this case, the common factual and legal questions all cut to the issues at the heart of the litigation. As the court in *Desue v. 20/20 Eye Care Network, Inc.* explained in finding predominance satisfied in the settlement context:

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether

> Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

No. 21-CIV-61275-RAR, 2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022).

Indeed, the answers to the key questions are not tangential or theoretical such that the Action will not be advanced by certification. Rather, they go to the core of the controversy. Counsel Decl. ¶ 76. The answers will be the same for each Settlement Class Member in that their Private Information was impacted in the Data Incident. *Id.* Common factual and legal questions predominate based on Conduent's alleged failure to safeguard all Settlement Class Members' Private Information from unauthorized access during the Data Incident. *Id.* Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g.*, *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312-315 (N.D. Cal. 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the

claims rise or fall on whether [the defendant] properly secured the stolen personal information," and these issues predominated over potential individual issues). The predominance requirement is therefore readily satisfied for purposes of this Settlement.

The second Rule 23(b)(3) prong – a class action is superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for the purpose of this Settlement. *See* Fed. R. Civ. P. 23(b)(3); *see also Prudential*, 148 F.3d at 316. To determine superiority, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any ligation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and, (D) the likely difficulties in managing a class action.

*Id.* Courts also consider whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated[.]" *Amchem*, 521 U.S. at 615.

Here, Settlement Class Members do not have a strong interest in controlling the prosecution of this case. Counsel Decl. ¶ 77. After all, it would cost them substantially more to litigate an individual case than they could recover in damages. *Id.* As other data breach courts have recognized, this case "is the classic negative value case; if class certification is denied, class members will likely be precluded from bringing their claims individually because the cost to bring the claim outweighs

the potential payout." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 165 (D. Md. 2022), *reversed on other grounds*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023). "For most class members the only realistic alternative to a class action is no action at all. In such a case, the adjudication of the matter through a class action is superior to no adjudication of the matter at all." *Id.* Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

***Ascertainability.*** Although not explicitly set forth in the Federal Rules, courts have read into Rule 23 an implicit requirement that a class be "definite" or "ascertainable." *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 175 (3d Cir. 2015); Manual § 21.222; 5 James W. Moore et al., Moore's Federal Practice 23.21[3][d] (3d ed. 2013). Here, there is a reliable, administratively feasible method to identify almost the entire Settlement Class and, in fact, Conduent and the Conduent Defendant Clients have already made this determination when they sent out breach notices to the approximately 62 million Settlement Class Members. Counsel Decl. ¶ 78. The Settlement Administrator will be provided with the Class List and send out Notice to all Settlement Class Members with a link to a Claim Form. *Id.*; SA ¶¶ 104-109, Ex. 4 (Claim Form). The remainder who are not sent Email Notice will likely be captured by the Publication Notice.

Accordingly, the Settlement Class should be certified for settlement purposes.

### D. Proposed Class Counsel Satisfy Rule 23(g)

Pursuant to Rule 23(g), Plaintiffs also move to designate James E. Cecchi of Carella Byrne, Jeff Ostrow of Kopelowitz Ostrow, Gary M. Klinger of Milberg and Norman E. Siegel of Stueve Siegel Hanson as Class Counsel. Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Here, each of these considerations weighs strongly in favor of the adequacy of proposed Class Counsel. Interim Co-Lead Counsel and Settlement Counsel performed substantial work identifying and investigating potential claims, properly supporting the allegations in the Complaint, and prosecuting Plaintiffs' claims in hard-fought, complex litigation. Counsel Decl. ¶ 91. As the Court observed when appointing them early in this Action, those attorneys and firms have substantial experience, individually and collectively, successfully prosecuting class actions and

other complex litigation throughout the United States. ECF Nos. 29-1–29-4. Moreover, the firms have demonstrated their abilities and commitment to this Action, devoting the resources and personnel necessary to get to this point, achieving a strong Settlement. Counsel Decl. ¶ 90. They far exceed the requirements of Rule 23(g) and should be appointed.

## VI. PROPOSED SCHEDULE

Plaintiffs request the Court set the below schedule, leading up to the Final Approval Hearing. At the Final Approval Hearing, the Court should hear all evidence and argument necessary to make its Final Approval of the Settlement and to grant Motion for Attorneys' Fees, Costs, and Service Awards. Proponents of the Settlement may offer argument in support of Final Approval. Objections to the Settlement, if any, will also be considered.

| EVENT | DATE |
|---|---|
| Deadline for Defendant to give Class List to Settlement Administrator | 20 days following Preliminary Approval |
| Notice Commencement | 40 days following Preliminary Approval |
| Deadline to complete Notice Program | 70 days following Notice Commencement |
| Deadline for filing Motion for Attorneys' Fees, Costs, and Service Awards | 70 days following Notice Commencement |
| Claim Form Deadline | 75 days following Notice Commencement |
| Opt-Out Deadline | 90 days following Notice Commencement |

| | |
|---|---|
| Objection Deadline | 90 days following Notice Commencement |
| Deadline for filing Motion for Final Approval | 100 days following Notice Commencement |
| Final Approval Hearing | ____________, 2027, at __:__ a.m./p.m. (to be scheduled at least 150 days following Preliminary Approval). |

## VII. CONCLUSION

Plaintiffs and Class Counsel respectfully request the Court: (1) preliminarily approve the Settlement; (2) certify the Settlement Class and Subclasses A and B; (3) approve the Notices and Notice Program, including the opt-out and objection procedures and the use of unencrypted email to provide the Email Notice and Reminder Email Notice; (4) approve the Claim Form and Claim Process; (5) appoint Plaintiffs as Class Representatives; (6) appoint James E. Cecchi, Jeff Ostrow, Gary M. Klinger, and Norman E. Siegel as Class Counsel; (7) appoint Epiq as the Settlement Administrator; and (8) enter the proposed Preliminary Approval Order, which is Exhibit 5 to the Agreement.

DATED: October 16, 2026

Respectfully submitted,

*/s/ James E. Cecchi*
James E. Cecchi
**CARELLA BYRNE CECCHI BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
Tel.: (973) 994-1700
Fax: (973) 994-1744
Email: jcecchi@carellabyrne.com

Jeff Ostrow (pro hac vice)
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Tel.: (954) 332-4200
Fax: (954) 525-4300
Email: ostrow@kolawyers.com

***Co-Lead Counsel***

Norman E. Seigel (pro hac vice)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Rd., Suite 200
Kansas City, MO 64112
Tel.: (816) 714-7112
Fax: (816) 714-7101
Email: siegel@stuevesiegel.com

Gary M. Klinger (pro hac vice)
**MILBERG, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel.: (866) 252-0878
Email: gklinger@milberg.com

***Settlement Counsel***